**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**ALBERT ARCHULETA,**

        **Plaintiff,**

vs.

**GARY E. JOHNSON, Governor of New Mexico,
NEW MEXICO DEPARTMENT OF CORRECTIONS,
ROBERT J. PERRY, Secretary of Corrections,
JOHN SHANKS, Director of Adult Prisons,
JERRY TAFOYA, Deputy Corrections Secretary,
JEFF SERNA, Interstate Compact Coordinator,**

and

**WACKENHUT CORRECTIONS CORPORATION,
ELOY MONDRAGON, Former Warden, GCCF
MAJOR RALPH LUCERO, Former Director of Security, GCCF**

and

**VIRGINIA DEPARTMENT OF CORRECTIONS,
RONALD ANGELONE, Virginia Corrections Director,
STANLEY K. YOUNG, Wallens Ridge State Prison Warden,**

        **Defendants.**

<u>**COMPLAINT FOR VIOLATIONS
OF CONSTITUTIONAL RIGHTS**</u>

Plaintiff Albert Archuleta presents the following Complaint seeking declaratory, compensatory, exemplary, and injunctive relief from Defendants' denials and violations of his civil and constitutional rights, stating as follows:

1. Plaintiff is **Albert Archuleta**. At the end of August 1999, Plaintiff was a prisoner serving time related to substance abuse offenses in A-Pod at the Guadalupe County Correctional Facility (GCCF), the Wackenhut Corporation prison in Santa Rosa, New Mexico.

2. Defendants are **Gary E. Johnson**, New Mexico Governor; the **New Mexico Department of Corrections**; **Robert J. Perry**, Secretary of Corrections; **John Shanks**, Deputy Secretary and Director of Adult Prisons; **Jerry Tafoya**, Deputy Secretary; and **Jeff Serna**, Deputy Secretary and Interstate Compact Coordinator.

3. Defendants include the **Wackenhut Corrections Corporation, Eloy Mondragon,** Former Warden, and **Major Ralph Lucero,** former Director of Security at GCCF.

4. **Virginia Department of Corrections** Defendants are **Ronald Angelone,** the Department Director and **Stanley K. Young**, the Warden of Wallens Ridge State Prison (WRSP) in Big Stone Gap, Virginia.

.    5. Defendants Gary Johnson, Robert J. Perry, John Shanks, Jerry Tafoya, Jeff Serna, Eloy Mondragon, Ralph Lucero, Ronald Angelone, and Stanley K. Young are sued in their individual as well as their official capacities. The individually named Defendants, including Governor Johnson and Secretary Perry, are alleged to have been directly, individually, and personally involved in the acts and omissions described herein or to have held supervisory or policy-making authority and control over those who did directly inflict punishment, pain, and deprivations of civil, constitutional, and human rights on Plaintiff.

6. Jurisdiction of the Federal Court is invoked pursuant to the Court's federal question jurisdiction under 42 USC Sections 1983, 1985, 1986, and the laws and Constitutions of the United States, especially the Fourth, Eighth, and Fourteenth Amendments and of the State of New Mexico, particularly Article II, Sections 4, 10, 13, and 18.

7. At the time of filing of this Complaint Plaintiff is not incarcerated and is therefore not subject to the restrictive provisions of the Prison Litigation Reform Act.

8. Plaintiff alleges violations by State officials and actors of rights protected by the New Mexico State Constitution which may not properly be subjected to the restrictive or preclusive provisions of the New Mexico Tort Claims Act.

## FACTUAL ALLEGATIONS

9. On September 3, 1999, Defendants transferred Plaintiff and other minimum and medium security prisoners from the Guadalupe County Correctional Facility in Santa Rosa, New Mexico, to Wallens Ridge State Prison ("WRSP") in Big Stone Gap, Virginia, a Supermax Prison, as punishment for alleged participation in the killing of a guard and a riot at the prison in Santa Rosa on August 31, 1999.

10. Plaintiff did not participate in the killing of the guard or the riot.

11. Defendants have not charged Plaintiff with any misconduct; they have not given him notice of any charges and have not held any hearing.

12. Although the prison was relatively new, by August 1999 the provision of correctional services at the prison in Santa Rosa was far beneath reasonable and adequate standards of corrections management and operations.

13. Classification and disciplinary systems were not functioning and Defendants were ignoring crucial institutional security issues and threats. The prison was built with serious design and structural flaws. The prison was understaffed and the staff was inexperienced and poorly trained.

14. On or around August 27, 1999, the Corrections Department and Wackenhut Defendants posted a Notice informing inmates that "Any further incidents of violence will result in the transfer of inmates to out-of-state facilities."

15. On the evening of August 31, 1999, a prisoner in the gym at the Santa Rosa prison attacked another prisoner and the staff ordered inmates to return to their units. Plaintiff was in his cell in A-Pod when prisoners attacked a guard in E-Pod.

16. Albert Archuleta took no part in the violence in E-Pod or the disturbance that followed; he remained locked in his cell throughout the disturbance.

17. The murder of the guard and the subsequent disturbance were primarily caused by the Wackenhut and New Mexico State Defendants' negligence, mismanagement, and lack of security at the prison in Santa Rosa.

18. The next day, September 1, 1999, Corrections Secretary Perry issued a press release promising that "I will have a firm and swift response to this incident."

19. Early on the morning of September 3, 1999, without prior warning, Santa Rosa prison guards placed Plaintiff on a bus; they chained him around the waist, handcuffed him, and placed shackles on his ankles. Around 3 a.m. a convoy of about 20-vehicles left Santa Rosa for Albuquerque. No one told the prisoners where they were being sent.

20. Following a wait of several hours in buses on the runway at Kirtland Air Force Base, Plaintiff and the other Santa Rosa prisoners were loaded by federal marshals into an airplane. Upon their arrival at a small Tennessee airport the prisoners were greeted by Virginia corrections officers and forced to wait for hours without water in hot vans with windows sealed shut.

21. That same day, September 3, 1999, Corrections Secretary Perry announced:

.... the immediate transfer of approximately 120 inmates incarcerated at the Guadalupe County Correctional Facility in Santa Rosa, to the Wallens Ridge Correctional Facility in Big Stone Gap Virginia.

22. Perry announced that the prisoners he was sending to Virginia "are the individuals from housing unit one, pod A & E, who participated in Tuesday nights' riot that resulted in the vicious killing of Correctional Officer Ralph Garcia."

23. Perry's press release also stated that:

The Wallens Ridge Correctional Facility is a Super Max Level 6 Prison, one of only two in the nation. The 120 inmates from GCCF will remain at Wallens Ridge Correctional Facility indefinitely. While at WRCF the inmates will be locked down for most of the day, programmed in their cells, and under the constant supervision of Correctional Officers armed with 12 gauge combat shotguns.

24. The State of Virginia had recently opened its two new Supermax Prisons, Wallens Ridge and Red Onion. Those prisons were designed and built to confine, control, and punish the worst and most violent prisoners in the country.

25. Plaintiff was kept in the bus for several hours before being dragged into the prison by Virginia Corrections Officers. After being strip searched Archuleta was dragged by seven or eight officers to the housing unit. Guards shouted taunts and threats. Some of the officers were armed with stun guns and other weapons; guards pulled Plaintiff by the hair, kicked him, and broke his partial dental plate.

26. Upon arrival at the cell in which he was to live, four or five Virginia Officers greeted Plaintiff with more beating and abuse. The officers kicked and punched him, loosening one of his front teeth.

27. After they left Plaintiff's cell the officers went to other cells to "greet" other New Mexico prisoners. For the next hours, Plaintiff could hear the screams of other prisoners as they were beaten by the Virginia officers.

28. At Wallens Ridge Plaintiff was held in a Segregation Unit. For the first five weeks at Wallens Ridge he was not allowed out of his cell, except for an occasional shower and "exercise."

29. While in Segregation at Wallens Ridge Defendants kept Plaintiff in a 12' by 7' cell and denied him reasonable opportunities for exercise or recreation out of the cell, denied meaningful programs or activities, denied medical or psychological attention, denied

access to books or law library, denied telephone calls and other human contacts, unreasonably and cruelly humiliated and threatened him, and in many such respects subjected Plaintiff to cruel, harsh, and unusual conditions of control and confinement which were far different and more oppressive than any of Plaintiff's prior New Mexico prison experiences.

30. At Wallens Ridge the Virginia officers subjected Plaintiff to extraordinarily harsh and degrading mistreatment, including absolute denial of privacy, strict control and limitation of movement, total removal of social contacts, absence of meaningful activities, extreme threats, punishment, and behavioral modification.

31. Virginia officers and prison staff told Plaintiff and the other New Mexico prisoners that they could not receive medical or psychological care because no records had accompanied them from New Mexico. To Plaintiff's knowledge, his medical and dental records never were sent to Virginia.

32. For the first month in segregation at WRSP, Plaintiff was given weekly "explanations" of his placement in segregation. Each time, Plaintiff was informed that he was being kept in segregation at the request of the New Mexico officials, who were continuing to "investigate."

33. A Virginia Corrections Officer later told Plaintiff that New Mexico prison officials had given "instructions" to the Virginia officials; the New Mexico officials allegedly told the Virginia officials to beat up the New Mexico prisoners to teach them a

lesson. The New Mexico officials reportedly told the Virginia officials that Plaintiff and the other New Mexico prisoners were the ones who killed the guard at the GCCF.

34. The New Mexico Defendants were fully aware of and encouraged and supported the Virginia Defendants' abuse of Plaintiff and the other New Mexico prisoners at WRSP.

35. At the time of his transfer to Wallens Ridge Plaintiff was not a gang member, he was not an escape risk, he had not engaged in any violent activity in prison, and he was not a troublemaker of any sort. At the time of the transfer, Plaintiff was a minimum custody prisoner who was just trying to do his time on drug abuse charges.

36. Defendants have still not given any reason, explanation, or justification for sending Albert Archuleta to Wallens Ridge confining him in the Segregation Unit, and abusing and mistreating him.

37. Defendants returned Plaintiff to New Mexico on or around January 21, 2000. Plaintiff was again imprisoned in the Guadalupe County Correctional Facility in Santa Rosa until he was released on probation.

38. Plaintiff bears the scars of his trip to Virginia. In addition to the loose tooth and broken denture, Plaintiff has marks on his ankles from the leg shackles. Plaintiff reports that he has suffered from serious depression and that he feels extreme anger and resentment when he recalls the fear, pain and suffering he experienced.

## COUNT 1

## VIOLATIONS OF THE RIGHT TO DUE PROCESS

39. After the inmate disturbance at the GCCF Defendants selected Plaintiff for transfer to the prison in Virginia without conducting any investigation, without stating any valid reason or justification, and without holding any hearing.

40. The Fourteenth Amendment to the United States Constitution and Article II, Section 18, of the New Mexico Constitution provide the rights to due process and equal protection of the laws.

41. Defendants Eloy Mondragon, Robert Perry, and other New Mexico Corrections Department officials selected and approved the selection of Plaintiff for transfer and Supermax imprisonment in Virginia without knowing whether he had participated in violence or rioting at Santa Rosa.

42. Defendants' transfer of Albert Archuleta to Virginia in chains and shackles, their misplacement of Plaintiff in the Segregation Unit of a Super maximum security prison in Virginia, and the imposition of cruelly restrictive conditions of confinement constitute atypical and significant hardships and deprivations of Albert Archuleta's fundamental rights and interests.

43. The New Mexico Defendants, including Governor Johnson and Secretary Perry, knew or should have known that Plaintiff did nothing wrong, and that he did not deserve to be sent to a Supermax prison.

44. The New Mexico Defendants, including Governor Johnson and Secretary Perry, knowingly and deliberately sent Plaintiff to the Supermax confinement without giving him any notice of charges or hearing.

45. Defendants' acts and omissions and their treatment of Albert Archuleta described herein violated commonly accepted norms of human, social, personal, and official conduct and behavior, and constituted human rights violations which are truly unconscionable and offensive to the concepts of ordered liberty and justice.

46. State, federal, and international statutes, regulations, rules and policies are applicable and intended to restrict, limit, and preclude many of the violations described herein.

47. Despite his conviction and sentence, Plaintiff had a substantial residual liberty interest which Defendants denied or seriously compromised by their acts and omissions.

48. At WRSP the Virginia Defendants exhibited a pattern and practice of use of excessive force and deliberate indifference to that use of force that compounded and exacerbated the initial injustices perpetrated against Plaintiff and constituted additional violations of Plaintiff's right to procedural and substantive due process of law.

49. Defendants are liable for the damages proximately resulting from their violations of Plaintiff's fundamental civil and constitutional rights to due process.

## COUNT 2

## VIOLATIONS OF THE RIGHT TO BE FREE
## OF CRUEL AND UNUSUAL PUNISHMENT

50. The preceding allegations and claims are adopted.

51. At the time Defendants transferred Plaintiff to Wallens Ridge, Plaintiff was a non-violent individual who had no reports, disciplinary infractions or misconduct on his prison record.

52. By subjecting Plaintiff to the most harsh and extreme conditions of confinement and by the deliberate infliction of pain, injury, and suffering described herein, Defendants have cruelly and unusually inflicted punishment that goes far beyond the bounds of any acceptable or necessary treatment and which is entirely without penological justification.

53. Defendants knew that Archuleta had nothing to do with the killing of the guard or the disturbance that followed. They also knew, and it was clearly foreseeable, that sending Plaintiff and other minimum and medium security prisoners like him to a Supermax penitentiary after falsely accusing them of killing a guard would result in pain, injury, and serious emotional harm and damage.

54. Defendants have established a pattern and practice of using unnecessary and excessive force which is neither justified or excused by any legitimate penological or correctional policies or practices. The force used against Plaintiff was not motivated by any good faith effort to restore order or maintain the security of the prison. To the contrary, the force used against Plaintiff was excessive, arbitrary, and unreasonable.

55. Defendants are liable for any and all damages, including but not limited to damages for mental and emotional distress and physical pain and suffering, caused by their infliction of cruel and unusual punishment on Plaintiff in violation of the Eighth Amendment to the United States Constitution and Article II, Section 13, of the New Mexico Constitution

### COUNT 3

### VIOLATIONS OF THE RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES

56. The preceding allegations and claims are adopted.

57. Throughout the time he was transported to and from Wallens Ridge State Prison and while he was at Wallens Ridge, Plaintiff was repeatedly and painfully restrained, shackled, handcuffed, placed in solitary confinement, and required to endure long periods of distress and discomfort.

58. The Fourth Amendment to the United States Constitution and Article II, Section 10, of the New Mexico Constitution prohibit unreasonable searches and seizures.

59. The Virginia Defendants forced Archuleta to submit to numerous strip searches. A Wallens Ridge memo details the procedure:

> Any time a strip search is conducted the inmate will be required to strip off all his clothing, turn around slowly, put his hands on his buttocks, spread his buttocks, squat to the ground while buttocks is still spread, and cough hard twice.
>
> This procedure will be followed any time a segregation inmate leaves his cell for any reason. There will be no exceptions to this procedure.

12

60.     By their policies, procedures, acts, and omissions, Defendants knowingly, deliberately, and unreasonably removed and denied the residuum of privacy and personal rights retained by Albert Archuleta.

61.     Both New Mexico and Virginia Defendants are liable for the damages resulting from their violations of Plaintiff's fundamental right to be free of unreasonable, unwarranted and unjustified searches and seizures.

## COUNT 4

## DENIAL OF EQUAL PROTECTION OF THE LAW

62.     The preceding allegations and claims are adopted.

63.     By selecting Plaintiff and compelling his transfer to Super maximum security confinement in Virginia Defendants acted arbitrarily and unreasonably and violated Plaintiff's right to equal protection of the law.

64.     Without reason, justification, or due process Defendants unreasonably classified Plaintiff as part of the group that "deserved" punishment and banishment to Supermax confinement in Virginia.

65.     Defendants treatment of Plaintiff and the other Santa Rosa inmates was unfair and in violation of the New Mexico prisoners' right to equal protection of the law.

67.     By treating Plaintiff and many of the other Santa Rosa prisoners differently from other prisoners and by treating Plaintiff and other New Mexico prisoners differently and more harshly than other prisoners at WRSP, Defendants have denied Plaintiff's right to equal protection of the law and are liable for damages resulting from their violations.

## COUNT 5

## VIOLATION OF INTERSTATE COMPACT

68. The preceding allegations and claims are adopted.

69. Defendants have entered into an Interstate Compact and other contracts and understandings among Wackenhut Corporation, Guadalupe County, and the New Mexico and Virginia Departments of Corrections.

70. On September 3, 1999, New Mexico Corrections Secretary Robert Perry and Virginia Corrections Director Ron Angelone entered into a Memorandum of Understanding providing for the transfer of the New Mexico prisoners to Wallens Ridge State Prison.

71. The Interstate Compact, codified as State law at Section 31-5-17 NMSA (2000), provides that inmates sent to another state's institutions "shall be treated in a reasonable and humane manner . . . .."

72. The Compact further provides that confinement in another state "shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state."

73. Defendants have breached the provisions of the Interstate Compact by failing to treat Plaintiff and others "in a reasonable and humane manner" and by failing to provide Plaintiff with the same rights he "would have had if confined in an appropriate institution" in New Mexico.

74. Plaintiff is a third-party beneficiary who has been damaged as a result of Defendants' breaches of the Interstate Compact and other contracts and Defendants are liable to Plaintiff for damages sustained as a proximate result of their misconduct.

## COUNT 6

### SUPERVISORY AND MANAGEMENT LIABILITY

75. The preceding allegations and claims are adopted.

76. The denials of due process rights and the arbitrary and gratuitous use of force described herein evidence malicious attempts to inflict punishment and injury, rather than good faith efforts to maintain order and the security of an institution.

77. Defendants Perry, Angelone, and Young failed to monitor and control the excessive use of force against Plaintiff by the Virginia Corrections Officers. In fact, Defendants encouraged and condoned such use of force and such harsh and excessive conditions of confinement.

78. The New Mexico Defendants have closely monitored the treatment of the New Mexico prisoners in Virginia and knew, or certainly should have known, of the mistreatment that occurred.

79. The pattern and practice of excessive force and deliberate indifference to the rights and interests of Plaintiff and other New Mexico prisoners occurred with the full knowledge, support, and encouragement of State supervisors and officials.. Defendants are

liable for damages resulting from their excessive use of force and deliberate indifference to Plaintiff's rights.

## COUNT 7

## CONSPIRACY

80. The preceding allegations and claims are adopted.

81. Defendants met, conversed, planned, and arranged between and among themselves and with their subordinates to execute the transfer, placement, and punishment of Plaintiff and the other New Mexico prisoners at Wallens Ridge State Prison.

82. Defendants have acted individually and together with each other and other government officials and employees to plan, cause, and effect the transfer of Plaintiff and other prisoners to Wallens Ridge State Prison knowing that the transfer and placement would inflict extraordinary physical and emotional injury, pain, suffering, and damage.

83. The "greeting" received by the New Mexico prisoners was planned and premeditated. The abusive practices were so uniformly applied, particularly on the night of the New Mexico prisoners' arrival at WRSP, that it is apparent there was a deliberate and premeditated plan, policy and practice to implement the physical and emotional abuse of the New Mexico prisoners.

84. Plaintiff is entitled to damages and other relief for injuries resulting from Defendants conspiracy to harm him by violating his constitutional rights.

## COUNT 8

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND CLAIM FOR EXEMPLARY AND PUNITIVE DAMAGES

85.     The preceding allegations and claims are adopted.

86.     Defendants' conduct described herein was willful, wanton, deliberate, malicious, and was intended to and did punish and inflict pain, physical injury, and emotional harm upon Albert Archuleta for acts he did not commit.

87.     Defendants have acted with deliberate and utter indifference for the rights of Albert Archuleta and with hateful, malicious, and invidious intent and motivation; their conduct in this case is shocking and egregious.

88.     Plaintiff is entitled to an award of exemplary and punitive damages to deter and prevent these Defendants and others from committing such extreme and offensive acts in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the award of the following relief:

A.     Declaratory and compensatory relief for damages resulting from violations of Plaintiff's liberty interests and rights to due process of law, including but not limited to damages for his pain, injury, suffering, and emotional distress.

B.     Declaratory and compensatory relief for damages resulting from violations of Plaintiff's right to be free of unreasonable searches and seizures and cruel and unusual punishment.

C. Declaratory and compensatory relief for damages resulting from violations of the interstate compact and other agreements among the parties.

D. Competent treatment, therapy, and counseling sufficient to return Plaintiff to the physical and mental condition he was in before Defendants sent him to Wallens Ridge.

E. Exemplary and punitive damages to discourage and prevent such and similar acts by Defendants and others in the future in the amount of at least One Million Dollars ($1,000,000).

F. Costs of this action and reasonable attorneys' fees.

G. Such other and further equitable, legal, declaratory, and compensatory relief as the Court deems just, proper, and necessary.

Respectfully submitted,

_____
Paul Livingston
Attorney for Albert Archuleta
P.O. Box 90908
Albuquerque, NM 87199
(505) 823-4410